**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ZYTAX, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-2582 |
| | § | |
| GREEN PLAINS RENEWABLE ENERGY, | § | |
| INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Zytax, Inc. sued Green Plains Renewable Energy, Inc. for breach of contract.  Zytax alleged that Green Plains failed to pay for software and consulting services relating to compliance with energy regulations in various states.  Green Plains has admitted that it did not pay Zytax for its products and services.  In its initial answer, Green Plains alleged that the parties' contract is unenforceable because of mutual mistake and misrepresentations by Zytax.  Green Plains also counterclaimed for fraud, misrepresentation, and breach of contract.  Zytax moved to dismiss the counterclaims under Rule 12(b)(6) and to strike several of Green Plains's affirmative defenses under Rule 12(f).  This court granted Zytax's motion, without prejudice, and granted Green Plains leave to amend its answer and counterclaims.  (Docket Entry No. 24).  Green Plains amended, again asserting fraud and mutual mistake as affirmative defenses and fraud, misrepresentation, and breach of contract as counterclaims.  (Docket Entry No. 25).  Zytax has moved to dismiss the fraud-and-mistake-based affirmative defenses and the counterclaims.  (Docket Entry No. 26).  Green Plains responded, (Docket Entry No. 29), and Zytax replied, (Docket Entry No. 30).

Based on the motion, response, and reply; the pleadings; and the applicable law, this court denies the motion to dismiss.  The reasons are explained in detail below.

## I.  Background

Green Plains produces, markets, and sells ethanol products throughout the United States. This business is subject to federal and state regulation, licensing requirements, and taxation.  The states impose varying requirements.  In its amended answer, Green Plains alleged that its failure to comply with applicable regulatory, licensing, and tax requirements could result in "fines, penalties and sanctions, as well as the potential cessation of business in those jurisdictions."  (Docket Entry No. 25, ¶ 27).  Green Plains alleged that it sought consulting services from Zytax because of the risks of noncompliance.

In the fall of 2008, Green Plains began discussions with Zytax about buying software to help achieve regulatory compliance in state and local jurisdictions.  Green Plains alleged that Zytax "holds itself out as a provider of 'strategic software automation solutions for indirect tax determination and excise motor fuels compliance for the energy industry, minimizing the effort required to maintain compliance and ensure determination accuracy" and also as "'the only proven commercial solution for energy tax complexities.'"  (*Id.*, ¶ 29).  During the parties' initial discussions, Zytax submitted a written proposal to Green Plains for its software and consulting services.  Green Plains alleged that Zytax made the following representations:

- "'Zytax is quite simply the industry and government agency standard for automating the determination, compliance, and filing of indirect taxes with proven expertise in Motor Fuels  and Commodities Taxation'";

- "Zytax would 'monitor the changing regulatory environment on [Green Plains's] behalf, including 'Rules and Rates Maintenance & Regulatory Compliance Monitoring' and 'compliance filing requirement updates, tax authority rule and rate monitoring for supported jurisdiction'"; and

- "Zytax would '[m]aintain representation for required tax authority agencies including State & Federal supported jurisdiction.'"

(*Id.*, ¶¶ 32, 34).

Green Plains alleged that Zytax representatives highlighted the risks of noncompliance, stating that "'[c]ompliance regulations are in a constant state of change and regulations vary between local jurisdictions, states and sometimes within counties . . . .  Commodities tax liability is exponentially greater than standard tax liability.  Determination inefficiencies and Compliance disputes impact cost to company through fines/fees/penalties, audit cost and cash flow organization.'"  (*Id.*, ¶ 33).  Green Plains alleged that Zytax represented that its software could eliminate these risks.  Zytax allegedly stated that its "Enterprise Compliance Express software would enable [Green Plains] to mitigate these risk and allow [Green Plains] to become fully compliant with all fuel reporting regulatory requirements through its fully automated software." (*Id.*, ¶ 35).  Zytax allegedly "represented that [it] would tailor its software and services to ensure compliance with all relevant taxing jurisdiction."  (*Id.*).  Green Plains also alleged that Zytax represented that most jurisdictions require tax reports to be filed electronically.  (*Id.*, ¶ 37).  Green Plains alleged that Zytax identified specific steps needed to ensure compliance in 17 different jurisdictions.  (*Id.*, ¶ 36).


On November 17, 2008, Green Plains reached an agreement with Zytax.  Green Plains would purchase Zytax software to use in meeting compliance obligations in 17 specified jurisdictions.  (*Id.*, ¶ 38).  The initial agreement incorporated a Statement of Work (SOW) under which Zytax agreed to install and configure its Zytax Express with Import Compliance Software for each of the 17 jurisdictions.  (*Id.*, ¶ 39).  After this initial agreement, Zytax told Green Plains that it was subject to ethanol fuel excise tax reporting obligations in six additional jurisdictions.  (*Id.*, ¶ 42).  On

3

December 29, 2008, Green Plains agreed to an amendment to the SOW, adding these six jurisdictions.  Under the agreement and amended agreement, Green Plains agreed to pay Zytax a software license fee of $7,000 per jurisdiction and an annual maintenance fee of $2,100 per jurisdiction.  (*Id.*, ¶¶ 44–45).

Green Plains identified a number of Zytax employees who made representations about the problems in achieving regulatory compliance and Zytax's abilities to do so.  Green Plains named eight Zytax representatives who made these representations orally.  Green Plains also claimed that Zytax's representations were reflected in the following written documents: (1) the initial written proposal identifying the 17 jurisdictions where Zytax software and services were needed to help Green Plains achieve regulatory compliance; (2) the initial SOW; (3) the initial agreement; (4) a November 18, 2008, invoice from Zytax for license and maintenance fees related to compliance software for the initial 17 jurisdictions; (5) the amended SOW, which identified 6 additional jurisdictions where Zytax software and services would help Green Plains achieve regulatory compliance; (6) a December 31, 2008, invoice for license and maintenance fees related to compliance software for the 6 additional jurisdictions; (7) "[a]n email from Doug Burdick to Allen Pham dated February 9, 2009"; (8) "[a]n email from Ray Naab to Keith Gilbour dated February 11, 2009;" (9) "[a] spreadsheet prepared by Ray Naab and forwarded by email on February 12, 2009"; and (10) "[a]n email from John Beatty to Keith Gilbour dated May 28, 2009."  (*Id.*, ¶ 54).

Green Plains alleged that shortly after entering into the Zytax agreement, it "began to question Zytax's purported 'expertise' as it related to alternative fuels."  (*Id.*, ¶ 45).  One reason was Zytax's allegedly improper preparation and late filing of tax documents that Green Plains had hired it to file with the State of Tennessee.  This late filing subjected Green Plains to $90,000 in fines, which Green Plains was ultimately able to have waived.  Concerned about the other jurisdictions,

4

Green Plains began contacting them to verify the information Zytax had provided.  As a result of these communications, Green Plains allegedly learned that Zytax had falsely represented Green Plains's regulatory reporting obligations in these jurisdictions.  Green Plains allegedly learned that "it was required to file reports in less than half of the twenty-three jurisdictions."  (*Id.*, ¶¶ 46–48). And according to the allegations, "Zytax acknowledged that [Green Plains] was in fact, not required to file ethanol fuel excise tax reports in [11] jurisdictions for which Zytax had sold software licenses."  Zytax, however, "refused to reduce and revise its invoices to remove the misrepresented jurisdictions."[1]  (*Id.*, ¶ 50).  Green Plains alleged that Zytax billed it over $100,000 "for software license and maintenance fees . . . for those [11] jurisdictions."  (*Id.*, ¶ 48).  Green Plains has not paid these invoices.  Green Plains also alleged that "many of the jurisdictions did not require electronic . . . reporting, but in fact, allowed manual or simplified reporting, using state provided Excel spreadsheet template."  (*Id.*, ¶ 49).

Green Plains also alleged that Zytax has not performed its duties under the agreement because Zytax installed the software on only one laptop computer, provided none of the passwords

---

[1]   It is unclear from the amended answer the precise number of jurisdictions in which Green Plains alleges that it was not required to file excise fuel tax reports.  In one section of the amended answer, Green Plains identifies the number as 11, (Docket Entry No. 25, ¶ 54), but Green Plains also alleged that it was required to file in "less than half of the twenty-three jurisdictions."  (*Id.*, ¶ 48).  Also, it is unclear from the complaint that Green Plains was not required to file in 11 jurisdictions. Green Plains alleges that "on or before November 17, 2008," the date of the initial agreement, "representatives of Zytax misrepresented that [Green Plains] was obligated to file ethanol fuel excise tax reports in each of the following jurisdictions: Illinois, Indiana, New Jersey, Oregon, and Cook County, Illinois.  And it alleged that "on or before December 29, 2008," the date of the amended agreement, "representatives of Zytax repeatedly misrepresented that Zytax was obligated to file ethanol fuel excise tax reports in each of the following jurisdictions: California, Florida, Pennsylvania, and Missouri.  Finally, Greens Plains alleged that it unnecessarily filed "federal Form 720 or xSTARS forms."  (*Id.*, ¶ 53).  This is eight state jurisdictions, one county jurisdiction, and the federal jurisdiction, for a total of ten.  Perhaps "Cook County, Illinois" describes two jurisdictions: Cook County and the State of Illinois.

that would allow Green Plains to access the software, and provided no instructions on using the software.  Green Plains alleged that it never used the software.  (*Id.*, ¶ 52).

Based on these allegations, Green Plains asserted the following six affirmative defenses:

- Zytax's claims are barred because it did not substantially perform its contractual obligations;

- the agreement is unenforceable for lack of consideration;

- the agreement is subject to rescission because of the negligent or fraudulent representations of facts "relating to the number and identity of jurisdictions in which [Green Plains] allegedly had to file ethanol fuel excise tax reports, and relating to the quality, competency, accuracy, and utility of its products and services";

- the agreement "is subject to reformation or rescission due to mutual mistake of fact regarding the number and identity of jurisdictions in which [Green Plains] was obligated to file ethanol fuel excise tax reports";

- Zytax's lawsuit is barred by unclean hands; and

- the agreement is unenforceable because Zytax fraudulently induced Green Plains to sign.

(*Id.*, ¶¶ 19–24).

Green Plains also asserted counterclaims for fraudulent misrepresentation, negligent misrepresentation, and breach of contract.  Green Plains sought rescission of the agreement because of Zytax's alleged material breach and fraudulent or negligent representation of material facts; reformation of the agreement to eliminate Green Plains's obligation to pay licensing and maintenance fees for jurisdictions that do not require reporting; damages, including consequential damages, for Zytax's "fraudulent or negligent misrepresentations of fact"; damages, including consequential damages, for Zytax's breach of contract; attorneys' fees and costs; and any "other relief by law or equity deemed just and proper by this court."  (*Id.*, ¶ 84).

6

To support its counterclaim for fraudulent misrepresentation, Green Plains alleged that Zytax held "itself out as having special knowledge and expertise concerning ethanol fuel excise tax reports" and fraudulently misrepresented "the number of jurisdictions in which [Green Plains] was required to file ethanol fuel excise tax reports," specifically that Green Plains "was obligated to file ethanol fuel excise tax reports in [23] jurisdictions, when [Green Plains] was in fact only obligated to filed ethanol fuel tax reports in [11] of those jurisdictions." (*Id.*, ¶ 61). Green Plains also alleged that Zytax misrepresented that tax reports would have to be filed electronically. Green Plains alleged that Zytax made all these representations to induce Green Plains to enter into the agreement and intended that Green Plains would rely on these representations. Green Plains also alleged that Zytax knew or should have known that the statements were false when made and knew or should have known that Green Plains would rely on the statements. Green Plains alleged that it did reasonably rely on Zytax's representations in signing the agreement. (*Id.*, ¶¶ 65–68). Green Plains alleged that as a result of Zytax's misrepresentations, it "was induced to purportedly agree to pay over $100,000 for useless software and computing services." (*Id.*, ¶ 70).

To support the counterclaim for negligent misrepresentation, Green Plains alleged that Zytax "knew or should have known, that [Green Plains] was not obligated to file ethanol fuel excise tax reports in [11] of the [23] jurisdictions" and that a "reasonably prudent consultant or contractor holding itself out as an expert in the area of fuel excise tax reporting would either have known or determined the extent of [Green Plains's] actual reporting requirements." (*Id.*, ¶ 73). Green Plains alleged that Zytax made these statements "negligently with a reckless disregard of the truth," (*Id.*, ¶ 72), inducing Green Plains "to enter into the Agreement." (*Id.*, ¶ 77).

In support of the third counterclaim, breach of contract, Green Plains alleged that if an enforceable contract existed, Zytax breached it by "failing to accurately determine the jurisdictions

in which [Green Plains] was obligated to file ethanol fuel excise tax reports," filing erroneous tax reports with the State of Tennessee, failing to timely deliver and install the Zytax Express Software, and failing to provide the promised expertise.  (*Id*, ¶¶ 79–84).

Zytax moved to dismiss the counterclaims as well as the affirmative defenses based on fraud and mistake.  (Docket Entry No. 26).  Zytax argued that the fraud and mistake allegations were not pleaded with the particularity required by Rule 9 of the Federal Rules of Civil Procedure and did not "address the deficiencies identified" previously by this court.  (*Id.* at 1).  Green Plains has responded, (Docket Entry No. 29), and Zytax has replied, (Docket Entry No. 30).  The arguments are discussed below.

## II.     **The Applicable Legal Standard**s

### A.     **Rule 8 and Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  *Twombly* abrogated the Supreme Court's prior statement in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *See Twombly*, 550 U.S. at 562–63 ("*Conley's* 'no set of facts' language . . . is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . .").  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see*

8

*also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1974).

In *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937 (2009), the Supreme Court elaborated on the pleading standards discussed in *Twombly*.  The Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).  With respect to the "plausibility" standard described in *Twombly*, *Iqbal* explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The *Iqbal* Court noted that "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).  "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (footnote omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964–65); *see also S. Scrap Material Co. v. ABC Ins. Co.* (*In re S. Scrap Material Co.*), 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965), *cert. denied*, 129 S. Ct. 1669 (2009).  "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum

expenditure of time and money by the parties and the court.'"" *Cuvillier*, 503 F.3d at 401 (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1966).

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)).  However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face . . . ." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (unpublished) (per curiam) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

**B.      Rule 9 and Rule 12(b)(6)**

Rule 9(b) states:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

FED. R. CIV. P. 9(b).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."  *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997)).  The pleader must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams*, 112 F.3d at 177.  In *Iqbal*, the Court acknowledged that while Rule 9 requires pleading with particularity "when pleading 'fraud or mistake,'" it allows "'[m]alice, intent, knowledge, and other conditions of a person's mind [to] be alleged generally.'"  *Iqbal*, --- U.S. ----, 129 S. Ct. at 1954 (alterations in original) (quoting FED. R. CIV. P. 9(b)); *see also, Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992) ("Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally.").

"To plead scienter adequately, a plaintiff must set forth specific facts that support an inference of fraud.**"** *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994). In *Iqbal*, 129 S. Ct. at 1954, the Court explained that term "generally," as used in Rule 9, "is a relative term."  The Court stated that "[i]n the context of Rule 9, ['generally'] is to be compared to the particularity requirement applicable to fraud or mistake," that "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard," and that Rule 9 "does not give [a party] license to evade the less rigid—though still operative—strictures of Rule 8."  *Iqbal*, 129 S. Ct. at 1954 (citing 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1301, at 291 (3d ed. 2004)).  "Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."  *Id.*

11

### III.     Analysis

#### A.     The Affirmative Defense of Mutual Mistake

Zytax argues that Green Plains has not pleaded mistake with the particularity required by Rule 9.  Under Texas law, the affirmative defense of mutual mistake allows parties to avoid an agreement formed under a misconception or mistake of a material fact.  *Nichols v. YJ USA Corp.*, Civ. Act. No. 3:06-CV-02366-L, 2009 WL 722997, at *17 (N.D. Tex. Mar. 18, 2009) (citing *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990)).  The defense applies only when the parties "were acting under the same misunderstanding of the same material fact."  *Grayson v. Grayson Armature Large Motor Div., Inc.*, No. 14-09-00748-CV, 2010 WL 2361432, at *5 (Tex. App.—Houston [14th Dist.] June 15, 2010, pet. denied) (citing *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 324 (Tex.App.-Houston [14th Dist.] 2003, pet. denied)).  The elements of mutual mistake are (1) a mistake of fact, (2) held mutually by the parties, (3) that materially affects the exchange.  *City of the Colony v. N. Tex. Mun. Water Dist.*, 272 S.W.3d 699, 735 (Tex. App.—Ft. Worth 2008) (citing *Barker v. Roelke*, 105 S.W.3d 75, 84 (Tex. App.—Eastland 2003, pet. denied)).  The doctrine of mutual mistake is not available to avoid an unhappy bargain. *Williams*, 789 S.W.2d at 265.

"Few federal courts have addressed the requirements for pleading mistake with particularity."  *PYR Energy Corp. v. Samson Resources Co.*, No. 1:05-CV-530, 2007 WL 858804, at *2 (E.D. Tex. Mar. 19, 2007).  "A well-pleaded claim grounded on mistake should include averments of what was intended, what was done, and how the mistake came to be made."  5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1299 (3d. ed.); *see also PYR Energy*, 2007 WL 858804, at *2.  "Inasmuch as the second sentence of Rule 9(b) provides that intent and other conditions of mind may be averred generally, and since the

12

particularity requirement is liberally construed when information as to the causative factors of the error is peculiarly within the knowledge of the opposing party, the pleading requirement set out in Rule 9(b) is not overly difficult to meet." WRIGHT & MILLER, *supra*, § 1299.

Green Plains has alleged with sufficient particularity the affirmative defense of mistake. Green Plains alleged that it agreed to purchase software and services from Zytax for 23 jurisdictions because both parties mistakenly believed that Green Plains had reporting obligations in all those jurisdictions. Green Plains allegedly discovered later that it did not have reporting requirements in 11 of those jurisdictions. Green Plains alleged that it relied on Zytax's expertise and opinion that Green Plains had reporting obligations in 23 jurisdictions. To the extent that Zytax argues that Green Plains has not identified the "who, what, when, where, and how" of the mistake, this level of particularity is not required under the applicable precedents. WRIGHT & MILLER, § 1299. The motion to dismiss the affirmative defense of mistake is denied.

## B.    The Affirmative Defense and Counterclaim of Fraud

Zytax moves to dismiss Green Plains's affirmative defense and counterclaim based on fraud for failing to plead with the particularity required by Rule 9(b). Green Plains alleged that Zytax misrepresented that Green Plains faced reporting regulations in 23 jurisdictions. Green Plains alleged that Zytax represented that most jurisdictions required tax reports to be filed electronically through Zytax or a similar electronic filer. In its amended complaint, Green Plains identified Zytax employees who orally made such representations. Green Plains also identified documents in which the representations were allegedly made. Green Plains alleged that it learned that these representations were false after it contacted the individual jurisdictions and discovered that 11 out of the 23 did not have any reporting requirements. Green Plains alleged that it also discovered that "many of the jurisdictions did not require electronic . . . reporting, but in fact, allowed manual or

13

simplified reporting using state provided Excel spreadsheet templates." (Docket Entry No. 25, ¶ 49).

Green Plains has identified specific allegedly false statements, the individuals who made those statements, documents allegedly containing the statements, and a factual basis showing that the statements were false. Green Plains has also alleged that the representations are of specific facts within the very areas Zytax identified as the areas of its expertise, supporting that Zytax representatives either knew that the specific statements were false or that the statements about the extent of Zytax's expertise were false. The motion to dismiss the affirmative defense and counterclaim based on fraud is denied.

### C.   The Negligent Misrepresentation and Breach of Contract Counterclaims

The amended complaint asserts negligent misrepresentation as an alternative to its fraud counterclaim. Texas law recognizes the tort of negligent misrepresentation as defined by the RESTATEMENT (SECOND) OF TORTS § 552. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999). The elements of a negligent misrepresentation claim are: (1) the representation was made by a defendant in the course of his business, or in a transaction in which it has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 438 (Tex.App.—Houston [14th Dist.] 2004, no pet.) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)).

Green Plains alleged that Zytax negligently represented that Green Plains was obligated to file ethanol-fuel-excise-tax reports in 23 jurisdictions. Green Plains alleges that "a reasonably prudent consultant or contractor holding itself out as an expert in the area of fuel excise tax reporting

either would have known or determined the extent of Green Plains's reporting requirements." (Docket Entry No. 25, ¶ 73). Green Plains alleged that as a result of these representations, it suffered damages, including employee time and labor spent correcting Zytax's mistakes and verifying compliance requirements, (*id.*, ¶¶ 45–47); "delays," (*id.*, ¶ 51); and "recovery of consulting fees [Green Plains] paid to [Zytax]." (Docket Entry No. 29, at 5). These allegations are not conclusory and the factual allegations, taken as true, state a plausible claim for relief.

The breach of contract claim is also sufficiently pleaded. To prevail on a breach of contract claim, a party must establish the following elements: (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach. *See Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex.App.—Houston [1st Dist.] 2001, no pet.). A breach occurs when a party fails or refuses to do something promised. *Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc.*, 826 S.W.2d 638, 640 (Tex.App.—Houston [14th Dist.] 1992, no writ). When one party to a contract commits a material breach of that contract, the other party is excused from further performance under the contract. *See Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994); *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex.App.—Houston [14th Dist.] 2008, no pet.). Green Plains has presented nonconclusory allegations that satisfy these elements. Green Plains alleged that Zytax breached the agreement by failing to determine the jurisdictions in which Green Plains was obligated to file ethanol-fuel-excise-tax reports, filing erroneous reports with the State of Tennessee, failing to timely deliver and install the Zytax Express software, and failing to provide promised expertise. Green Plains acknowledges that it has refused to pay Zytax, but alleged that it failed to do so because of Zytax's breach. *See Hernandez*, 875 S.W.2d at 692.

15

Zytax argues that the pleadings are deficient because they do not allege damages.  Green Plains alleged that Zytax's breach of its contract caused the same damages as Zytax's negligent misrepresentation: consequential damages, including loss of employee time and labor spent correcting Zytax's mistakes and verifying compliance requirements, (*id.*, ¶¶ 45–47); "delays," (*id.*, ¶ 51); and "recovery of consulting fees [Green Plains] paid to [Zytax],"  (Docket Entry No. 29, at 5).  These allegations are not conclusory.  The factual allegations, taken as true, state a plausible claim for relief.

**IV.    Conclusion**

Zytax's motion to dismiss is denied.

SIGNED on November 10, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge